UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

SALUD ALBERTO MARTINEZ
RODRIGUEZ,

      Petitioner,

v.                                        No. 1:26-CV-044-H

WARDEN, BLUEBONNET
DETENTION FACILITY, et al.,

      Respondents.

## <u>ORDER</u>

Salud Alberto Martinez Rodriguez entered the United States illegally with his mother in 2005 at the age of two.  In 2020, he applied for relief under the Deferred Action for Childhood Arrivals (DACA) program.  That application has not been approved, and will not be anytime soon, because DHS is enjoined from processing new DACA applications in the State of Texas.  *See Texas v. United States*, 126 F.4th 392, 422 (5th Cir. 2025) ("*Texas 2025*").  Last March, Martinez Rodriguez was arrested for domestic abuse and placed in immigration detention pending removal.

Now, just a few days before what may be his final immigration hearing, he files a combined petition and complaint seeking the continuation of his immigration hearing, a stay of removal, consideration of his DACA application, and release on bond under Section 1226 of the Immigration and Nationality Act (INA).  He does so through the writs of habeas corpus and mandamus, as well as under the Administrative Procedure Act (APA).  Given the nature of relief sought, the Court has considered Martinez Rodriguez's petition under an accelerated timeline.  Nevertheless, the Court has thoroughly considered his contentions.

The Court is unpersuaded.  The APA does not empower this Court to micromanage immigration judges to read applications that they cannot grant.  And for substantially the same reasons, his mandamus petition must be denied.  Furthermore, as "[a]n alien present in the United States who has not been admitted," Martinez Rodriguez is an "applicant for admission" subject to the INA's mandatory-detention provision.  8 U.S.C. § 1225(a), (b)(2)(A).  Therefore, Martinez Rodriguez's petition (Dkt. No. 1) is denied.

It "appears from the application that the applicant or person detained is not entitled" to a writ of habeas corpus.  28 U.S.C. § 2243.  Thus, while the Court would ordinarily issue an order to show cause, it exercises its discretion to forgo that step here.  *Id.*; *see Wottlin v. Fleming*, 136 F.3d 1032, 1034 (5th Cir. 1998).  The petition (Dkt. No. 1) is denied.

1.    **Background**

   A.    **Factual Background**

Martinez Rodriguez is a native and citizen of Mexico.  Dkt. No. 1-3 at 45.  In 2005, at the age of two, Martinez Rodriguez illegally entered the United States at an unknown location.  *Id.*  Martinez Rodriguez is one of many young people who seek to claim a measure of protection against removal under the DACA program.  In the 2010s, the "Government attempted to phase out DACA," but it faced stiff opposition from "courts around the nation [who] were asked to enjoin or vacate the attempt to end the program." *Texas v. United States*, 549 F. Supp. 3d 572, 580 (S.D. Tex. 2021) ("*Texas 2021*") (collecting cases).  In June 2020, the Supreme Court affirmed vacatur of the recission and vacated the associated injunctions.  *See DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 36 (2020).  Martinez Rodriguez filed his DACA application months later, in December.  Dkt. No. 1 ¶ 71.

After *Regents*, a coalition of States moved for summary judgment in the *Texas* litigation, seeking to vacate DACA as a whole.  *See Texas 2021*, 549 F. Supp. 3d at 576–77. In 2021, the Southern District of Texas concluded that "DHS violated the APA with the creation of DACA and its continued operation."  *Id.* at 624.  The Southern District permitted DHS "to accept new DACA applications and renewal DACA applications," but "enjoined [it] from approving any new DACA applications and granting the attendant status."  *Id.*  The Fifth Circuit affirmed the injunctive relief but remanded for further proceedings in light of a new DHS rule regarding DACA.  *Texas v. United States*, 50 F.4th 498, 531–32 (5th Cir. 2022).  Last year, the *Texas* litigation returned to the Fifth Circuit, once again preserving the injunction against new DACA applications while limiting the scope of the injunction to Texas.  *Texas 2025*, 126 F.4th at 422.

Naturally, the ongoing *Texas* litigation means that Martinez Rodriguez's DACA application remains pending over five years later.  In September 2024, Martinez Rodriguez received a Notice to Appear, charging him with removability as an alien "present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General."  Dkt. No. 1-3 at 45; 8 U.S.C. § 1182(a)(6)(A)(i).  As a result of the NTA, Martinez Rodriguez was briefly detained before being released on bond in October 2024.  Dkt. No. 1 at 16; *see* 8 U.S.C. § 1226(a).

In early 2025, the Dallas County District Attorney charged Martinez Rodriguez with Assault Causing Bodily Injury to a Family Member.  Dkt. No. 1 at 14.  Whatever the merits

of that charge, which was ultimately dismissed,[1] ICE re-detained Martinez Rodriguez.  *Id.*
He has remained in detention since and is currently detained at the Bluebonnet Detention
Center in Anson, Texas.  *See id.* at 1.

In the meantime, Martinez Rodriguez's immigration proceedings are well underway.
The record shows prior proceedings in August 2025, Dkt. No. 1-4 at 30, October 2025, *id.* at
5, and December 2025, *id.* at 47.  In addition to his DACA application, Martinez Rodriguez
has applied for relief through asylum, withholding of removal, and the Convention Against
Torture.  *See* Dkt. Nos. 1-4 at 29–50; 1-5 to 1-7.[2]  Seeking to delay or prevent his removal, he
twice filed to terminate proceedings pending the outcome of his DACA petition; both
petitions were denied.  Dkt. No. 1-4 at 21, 27; *see Matter of Coronado Acevedo*, 28 I. & N. Dec.
648 (A.G. 2022) (holding that IJs have limited authority to terminate proceedings).

The next hearing is set for February 5, 2026.  Dkt. No. 1 at 13.  Having already
thoroughly briefed his immigration proceedings, Martinez Rodriguez believes that the
February 5 hearing "may be [his] last stand to fight removal based on DACA" and his
application for relief through asylum, withholding, or the Convention Against Torture.  *Id.*

---

[1] Martinez Rodriguez calls the charge "dubious[]" and notes that "[his] family, one of whom was the
supposed victim, is paying his legal bills."  Dkt. No. 1 at 14.  The motion to dismiss in that case
notes that "[t]he State [was] unable to procure the presence or cooperation of the complaining
witness," and so it had no choice but to dismiss.  Dkt. No. 1-5 at 18.

[2] The facts surrounding that application are discussed at great length in the petition and attached
documents.  In short, Martinez Rodriguez "fears that if he is removed [to Mexico], he will be
targeted, tortured, and likely killed" by the CJNG cartel, which has allegedly murdered seven of his
cousins.  Dkt. No. 1 at 11.

B.      **Procedural Background**

Instead of waiting for a decision from Judge Andrasko, Martinez Rodriguez filed the instant petition (Dkt. No. 1) and motion for a TRO (Dkt. No. 3). The petition makes several claims.

First, Martinez Rodriguez petitions for a writ of mandamus and files a complaint for relief under the APA. Dkt. No. 1 at 17–18. The two claims raise the same argument: DHS has failed to timely consider his DACA application, and thus, while he "does not request an order compelling approval" of his application in light of the *Texas* decisions, "[he] seeks an order compelling agency action to a lawful endpoint," "a reasoned written agency action," and "a Stay of Removal while" the *Texas* litigation "continue[s its] journey through the U.S. Courts." *Id.* at 18. In sum, he contends that DHS's failure to act warrants a stay of removal until the *Texas* litigation or a related case reaches its final conclusion, presumably by way of resolution at the United States Supreme Court.

Second, Martinez Rodriguez petitions for a writ of habeas corpus. In one fell swoop, he says his detention without bond violates the INA, the APA, and the Fifth Amendment's Due Process Clause. *Id.* at 14–15. He asks the Court to find that he is eligible for release under bond and that he must be released (either through a bond redetermination or through court order) as a non-flight risk and non-danger to the community. *See id.* at 16–17 (citing *Matter of Guerra*, 24 I. & N. Dec. 37 (BIA 2006)).[3]

---

[3] In addition, Martinez Rodriguez seeks an injunction preventing his transfer from outside this Court's jurisdiction pending final resolution of his petition. Dkt. No. 1 at 15–16.

2.    **Legal Standard**

A.    **The APA**

The APA provides that "[c]ourts can 'compel agency action unlawfully withheld or unreasonably delayed.'" *Li v. Jaddou*, No. 22-50756, 2023 WL 3431237, at *1 (5th Cir. May 12, 2023) (unpublished opinion) (quoting 5 U.S.C. § 706(1)).  An APA compulsion claim "can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). Moreover, the power to compel "is limited to instances where an agency ignored a specific, unequivocal command in a federal statute or binding regulation.'" *Li*, 2023 WL 3431237, at *1 (quoting *Fort Bend County v. U.S. Army Corps of Eng'rs.*, 59 F.4th 180, 197 (5th Cir. 2023) (internal quotation marks omitted)).

B.    **The Writ of Mandamus**

 "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361.  Writs of mandamus are not easily granted.  "It is hornbook law that mandamus is an extraordinary remedy which should be utilized only in the clearest and most compelling of cases." *Carter v. Seamans*, 411 F.2d 767, 773 (5th Cir. 1969); *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004) (same).  "To obtain a writ of mandamus, a plaintiff must establish '(1) a clear right to the relief, (2) a clear duty by the respondent to do the act requested, and (3) the lack of any other adequate remedy.'" *Yan v. Mueller*, Civ. A. No. H-07-313, 2007 WL 1521732, at *5 (S.D. Tex. May 24, 2007) (quoting *Davis v. Fechtel*, 150 F.3d 486, 487 (5th Cir. 1998)); *Giddings v. Chandler*, 979 F.2d 1104, 1108 (5th Cir. 1992).  And "[t]o ensure that mandamus remains an

extraordinary remedy, the petitioner carries the burden of showing that his right to issuance of the writ is 'clear and indisputable.'" *Id.* (quoting *Miller v. French*, 530 U.S. 327, 339 (2000)).

### C.    The Writ of Habeas Corpus

"[A]bsent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2). With 28 U.S.C. § 2241, Congress authorized federal courts to resolve habeas petitions, including in immigration-detention cases. *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001). Habeas exists solely to "grant relief from unlawful imprisonment or custody." *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976). Thus, for the writ to issue, the petitioner must be "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995). A court considering a habeas petition must "determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

### 3.    Analysis

Martinez Rodriguez seeks two overarching forms of relief: (1) mandamus and APA relief to halt his immigration proceedings and stay removal; and (2) habeas relief ordering his release or a new bond hearing. Martinez Rodriguez's mandamus and APA claims appear to be novel,[4] but his arguments on the bond issue are similar, if not identical, to those

---

[4] Neither his claim-for-relief sections nor argument sections cite any legal authorities in support of his requested relief. Dkt. No. 1 at 17–18, 31–32.

the Court has rejected in numerous prior cases.[5]  Even so, the Court considers the

arguments raised in Martinez Rodriguez's petition to address whether DHS's failure to

review (but not process) his DACA application entitles him to relief under the APA or a

writ of mandamus, and whether bond-less detention of aliens present in the United States

without admission violates the INA, the Constitution, or the APA.

The Court considers this matter on an expedited timeline, given the requested stay of

Martinez Rodriguez's immigration hearing set for Thursday morning.  The Court has

analyzed his petition and arguments in detail and finds they are lacking.

### A.    The delay resulting from the *Texas* litigation does not merit relief under the APA or through a writ of mandamus.

Martinez Rodriguez first seeks relief under the APA and through a writ of

mandamus.  The two claims rest on one theory: that, because of DHS's failure to consider

Martinez Rodriguez's DACA application, the Court should compel DHS to stay removal

until such time that it *can* take action.  In the meantime, the IJ should sift through the

materials in his DACA application, presumably to give a reasoned and appealable order

stating whether he would have been entitled to DACA relief absent the *Texas* litigation.

Dkt. No. 1 at 17–18.

At the outset, Martinez Rodriguez's APA claim appears to be an end-run on his

immigration proceedings.  In light of the *Texas* litigation, it is not possible for an

immigration court to grant his DACA application.  And if he is seeking a stay of removal

---

[5] *See, e.g.*, *Higareda-Cano v. Noem*, No. 1:25-CV-225, Dkt. No. 13 at 9–10 (N.D. Tex. Jan. 30, 2026); *Garibay-Robledo v. Noem*, ___ F. Supp. 3d ___, No. 1:25-CV-177, 2026 WL 81679 (N.D. Tex. Jan. 9, 2026); *Gomez Hernandez v. Lyons*, No. 1:25-CV-216, 2026 WL 31775 (N.D. Tex. Jan. 6, 2026); *Montelongo Zuniga v. Lyons*, ___ F. Supp. 3d ___, No. 1:25-CV-221, 2025 WL 3755126 (N.D. Tex. Dec. 29, 2025).

until the *Texas* litigation concludes, he is instead seeking the *opposite* of compelled agency action.

But even looking past the unusual nature of his demand for relief, the APA claim contains a fatal weakness.  As Martinez Rodriguez acknowledges, there is no mandated timeline in which an IJ must consider a pending application for relief under DACA.  *Id.* at 18.  Like any other agency action, it must only be determined within a "reasonable" amount of time.  5 U.S.C. § 555(b).[6]  Because "there is no requirement that this relief be granted on a particular timeline," the only question is whether the continued delay is unreasonable. *Heidarnejad v. U.S. Citizenship & Immigr. Servs.*, 721 F. Supp. 3d 520, 525 (W.D. Tex. 2024).[7]

For three independent reasons, the delay is reasonable.  First, and most obviously, no DACA application can be fully reviewed and addressed because the *grant* of any such application would be in violation of the Fifth Circuit's stay of DACA applications in Texas. *Texas 2025*, 126 F.4th at 422.  While the injunction does not prevent the processing or consideration of new applications, it is unreasonable to expect IJs to set aside their heavily burdened schedule to read over an application that they are unable to grant.

Second, even if the *Texas* litigation did not stay grants of DACA relief, the terms of the DACA memorandum and regulations are purely "aspirational," setting no expectation of what constitutes a reasonable amount of time for review.  *Heidarnejad*, 721 F. Supp. 3d at 525 (quoting *Li*, 2023 WL 3431237, at *1).

---

[6] *See* 8 C.F.R. §§ 236.22, 236.23 (defining eligibility and procedures for DACA applications without setting a time for processing).

[7] At least at the outset, Section 236.22(c)'s emphasis on consideration of the eligibility factors suggest that review of the application may still be "mandatory" and thus capable of review under the APA, notwithstanding other considerations.  *Cf. Fort Bend County*, 59 F.4th at 198.

Third, with an immigration hearing approaching in mere days, there is ample time for Martinez Rodriguez to discuss the issue before the IJ and receive an appropriate ruling. It is hard to say that someone in the midst of pending immigration proceedings who has repeatedly drawn attention to a pending application ahead of the next proceeding is someone who is subject to an unreasonable delay.

Thus, for each of these independent reasons, there is no "specific, unequivocal command" that an IJ must read over Martinez Rodriguez's pending DACA application. *Norton*, 542 U.S. at 63. APA relief is unwarranted.

The Court's resolution of the APA claim necessarily means judicial review exists outside the writ of mandamus. Because an adequate means of judicial review already exists through the APA claim, the writ of mandamus must be denied. *See Heidarnejad*, 721 F. Supp. 3d at 525–26. Even were no other relief available, the mandamus claim would fail because Martinez Rodriguez cannot establish a clear right to relief for the same reasons discussed above. *Id.*; *Davis*, 150 F.3d at 487.

### B.    The INA authorizes Martinez Rodriguez's detention without bond.

Next is Martinez Rodriguez's claim under the INA. The dispute is, in short, as follows. Section 1225(b)(2)(A) sets out detention requirements for "applicant[s] for admission" to the United States. Specifically, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." *Id.* Subject to certain narrow exceptions discussed below, Section 1225(b)(2)(A) "mandate[s] detention of applicants for admission until certain [removal] proceedings have concluded." *Jennings v. Rodriguez*, 583

U.S. 281, 297 (2018).  Nothing in Section 1225 "says anything whatsoever about bond hearings."  *Id.*

Section 1226(a), on the other hand, permits discretionary detention.  "On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."  8 U.S.C. § 1226(a).  Instead of detention, the Attorney General "may" release the alien on bond, "[e]xcept as provided in subsection (c)."  *Id.* § 1226(a), (2)(A)–(B).  Section 1226(c) in turn requires the Attorney General to "take into custody any alien" who is inadmissible or removable for involvement in certain criminal offenses.  *Id.* § 1226(c)(1)(A)–(E); *see Jennings*, 583 U.S. at 303.  If Section 1226(c) does not apply, and if an alien is released on bond pending removal, the Attorney General may still re-detain him "at any time."  8 U.S.C. § 1226(b).

The question is whether Martinez Rodriguez must be detained without bond under Section 1225 or receive a bond hearing and possibly release under Section 1226.  In *Matter of Yajure Hurtado*, the BIA held that aliens present in the United States without admission must be detained without bond under Section 1225 for the duration of their removal proceedings. 29 I. & N. Dec. 216, 220 (BIA 2025).[8]

Martinez Rodriguez asserts that he is entitled to release on bond under Section 1226. However, as the Court has explained in prior decisions, *see supra* n.5, that is not the case.

---

[8] Typically, a "person seeking habeas relief must first exhaust available administrative remedies." *Hinojosa v. Horn*, 896 F.3d 305, 314 (5th Cir. 2018).  An exhaustion requirement in this context is likely prudential, not jurisdictional.  *See* 8 U.S.C. § 1252(d)(1) (requiring exhaustion only for a "final order of removal").  That said, it would be "an exercise in futility" for Martinez Rodriguez to appeal to the BIA.  *Garner v. U.S. Dep't of Lab.*, 221 F.3d 822, 825 (5th Cir. 2000).  The BIA issued *Yajure Hurtado* on September 5, 2025.  Given the recency, there is little prospect that the BIA would reconsider *Yajure Hurtado* here.  Thus, Martinez Rodriguez's habeas petition does not present an exhaustion problem.  *See id.*

Section 1225 defines an "applicant for admission" as "[a]n alien present in the United States who has not been admitted." 8 U.S.C. § 1225(a)(1). Martinez Rodriguez is an "alien." He is "present in the United States." He "has not been admitted" because he did not "lawful[ly] ent[er] [the country] after inspection and authorization by an immigration officer." *Id.* §§ 1101(a)(13)(A)–(B) (defining "admission" and "admitted"); 1182(d)(5)(A) (noting that paroled aliens are not admitted). As an "applicant for admission" who "is not clearly and beyond a doubt entitled to be admitted," Martinez Rodriguez "shall be detained" under Section 1225(b)(2)(A). He is not entitled to a bond hearing.

Given the urgent demand of Martinez Rodriguez's petition, the Court will not focus on the counterarguments raised in the prior cases. *See supra* n.5. It will only address those which Martinez Rodriguez raises that are unique.[9]

---

[9] In addition to the meritorious arguments, Martinez Rodriguez raises a number of frivolous attacks against mandatory detention. First, he says the Court is "granting deference to Executive Branch agencies." Dkt. No. 1 at 7. Not so: the Court has repeatedly and clearly explained that detention is mandatory according to the plain text of the INA, and that the BIA's decision in *Yajure Hurtado* is merely persuasive authority to that end. *Montelongo Zuniga*, 2025 WL 3755126, at *4 n.3.

Second, twisting about, he says that deference *is* due to the Executive, so long as that Executive was the one that granted bond. Dkt. No. 1 at 28. But, once again, deference is only due to the extent an agency has the "power to persuade." *Montelongo Zuniga*, 2025 WL 3755126, at *4 n.3 (quoting *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 402 (2024) (further quotation omitted)). The practice of prior administrations is unpersuasive in light of the INA's plain text.

Third, he says *Yajure Hurtado* failed to state "what source repealed [Section] 1226." Dkt. No. 1 at 21. *Yajure Hurtado* does not suggest Section 1226 was repealed, because it was not. The *Yajure Hurtado* panel merely came to a different conclusion about the proper reading of the INA.

Fourth, he criticizes *Yajure Hurtado* for over-reading Attorney General Sessions's modest ruling regarding Section 1225 in *Matter of M-S-*, I. & N. Dec. 509 (A.G. 2019). Dkt. No. 1 at 23. But even if *Yajure Hurtado* did such a thing (and it did not), that does not permit a re-write of the INA.

Last, he says "Section [] 1225(b) permits arrival release only through parole under [Section] 1182(d)(5)." Dkt. No. 1 at 26. But Section 1225 expressly applies to "aliens who have not been admitted *or* paroled." 8 U.S.C. § 1225(b)(1) (emphasis added).

First, Martinez Rodriguez argues that Section 1226 is "an entirely permissive section," containing on its own text no hint as to mandatory detention. Dkt. No. 1 at 22. But statutes do not exist in a vacuum. They "should not be read as a series of unrelated and isolated provisions," but rather read together with appropriate context. *Gonzales v. Oregon*, 546 U.S. 273 (2006). Martinez Rodriguez fails to interrogate what it is that Section 1225(a)(1) means when it says that "[a]n alien present in the United States who has not been admitted" is "an applicant for admission," and why subsection (b)(2)(A) says that applicants for admission "shall be detained." And when placing the two statutes side by side, the idea that Section 1226 reigns supreme and unadulterated cannot be maintained.

Second, Martinez Rodriguez says that denying IJs "independent judgment in every case" as to bond "would be unlawful." Dkt. No. 1 at 22. He relies on the IJ's generic authority to conduct proceedings and consider evidence, *see* 8 U.S.C. § 1129a(b), as well as the general admonition that IJs are to "exercise their independent judgment," 8 C.F.R. § 1003.10. The Court fails to understand how limits on the discretion of agency actors are "unlawful." Dkt. No. 1 at 22. It is par for the course that Congress sometimes empowers and sometimes limits the discretionary authority of its agents. Even Article III judges are not so immune to limitations on their statutory authority. *See, e.g.*, 8 U.S.C. § 1252(f).

Third, Martinez Rodriguez picks at the question of whether *Jennings v. Rodriguez*, 583 U.S. 281 (2017), favors mandatory detention, as this Court has suggested in prior cases. *See supra* n.5. But as the Court explained in *Higareda-Cano v. Noem*, even "if the Supreme Court assumed without deciding that Section 1226 governed cases like" this one, it would have done so in reliance upon the government's former position that detention was not mandatory. Dkt. No. 13 at 9–10. *Jennings* is persuasive evidence for the conclusion the

Court reached in *Montelongo Zuniga* and other cases, but were it not so, the plain text of the INA would cement the issue in favor of mandatory detention. *See id.*

Fourth, Martinez Rodriguez contends that his detention under Section 1225(b) "is inconsistent with DHS's own contemporaneous custody paperwork." Dkt. No. 1 at 25. Indeed, at least until recently, many persons detained at the border were released on a Form I-220A, which identified the person as released subject to Section 1226. *Goyo Martinez v. Villegas*, No. 1:25-CV-256, 2026 WL 114418, at *7 (N.D. Tex. Jan. 15, 2026) (citing *Becerra Vargas v. Bondi*, No. SA-25-CV-1023, 2025 WL 3300446, at *1 (W.D. Tex. Nov. 12, 2025)). However, the U.S. Code trumps the Code of Federal Regulations. "Because the statute prevents ICE from giving [Martinez Rodriguez] the relief he seeks, he cannot 'turn[] back the clock' to a time when such relief was available as a matter of practice." *Id.* (quoting *Surovtsev v. Noem*, No. 1:25-CV-160, 2025 WL 3264479, at *8 (N.D. Tex. Oct. 31, 2025)).

Finally, Martinez Rodriguez cites a series of recent decisions in the Southern District of Texas where courts have granted habeas relief through a bond hearing under Section 1226. *See* Dkt. Nos. 1 at 30; 3 at 8. As the Court previously explained, while a majority of courts have rejected the respondents' position, "[t]hat does not . . . make them right." *Montelongo Zuniga*, 2025 WL 3755126, at *7.

Nevertheless, the Court has reviewed the cited decisions provided by Martinez Rodriguez and finds them unpersuasive. Each merely repeats the same arguments that the Court has previously addressed. Two decisions, *Alkis v. ICE* and *Fuentes v. Lyons*, do not even analyze the issue so much as gesture at the sheer number of courts who have concluded in favor of habeas petitioners and without so much as mentioning the courts that disagree. No. 5:25-CV-168, Dkt. No. 22 at 5–6 (S.D. Tex. Nov. 4, 2025); No. 5:25-CV-153,

– 14 –

Dkt. No. 15 (S.D. Tex. Oct. 16, 2025).  And two more, *Hassan-Ahmed v. Noem* and *J.A.V. v. Trump*, are totally unrelated to the issue at bar.  *Hassan-Ahmed* is a dismissal order that came about because "the petitioner was removed from the United States."  No. 4:25-CV-2985, 2026 WL 213523, at *1 (S.D. Tex. Jan. 27, 2026).  *J.A.V.* dealt with the application of the Alien Enemies Act and does not even contain the word "bond."  781 F. Supp. 3d 535 (S.D. Tex. 2025).

Thus, the Court is unpersuaded.  The Court concludes that the INA authorizes mandatory detention for all non-admitted aliens under Section 1225(b)(2)(A).  It is therefore unnecessary to reach Martinez Rodriguez's claim that, if he is entitled to bond release, the factors from *Matter of Guerra* require his release.  24 I. & N. Dec. 37.

### C.    The Due Process Clause does not require the government to give Martinez Rodriguez a bond hearing.

In the alternative, Martinez Rodriguez urges that the government's refusal to provide a bond hearing violates the Due Process Clause of the Fifth Amendment.  *See* Dkt. Nos. 1 at 14–15; 3 at 6.  His challenge appears to levy three claims for relief: that  he cannot be re-detained "without alleging a violation of prior release conditions or providing due process"; that re-detention without the opportunity for a bond hearing violates due process; and that doing so also imposes "punitive rather than regulatory" punishment in violation of the Due Process Clause.  Dkt. No. 1 at 19.  He does not clarify whether his challenge is based on substantive or procedural due process.  But either way, he is not entitled to relief.

Start with substantive due process.  That doctrine protects "only 'those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition.'"  *Dep't of State v. Muñoz*, 602 U.S. 899, 910 (2024) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997)).  While still recognizing due-process rights for

aliens present in the United States, *see, e.g.*, *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025), the Supreme Court has long affirmed the constitutionality of executive immigration procedures. The "through line of history," the Supreme Court recently explained, is "recognition of the Government's sovereign authority to set the terms governing the admission and exclusion of noncitizens." *Muñoz*, 602 U.S. at 911–12.  To that end, "Congress regularly makes rules that would be unacceptable if applied to citizens." *Mathews v. Diaz*, 426 U.S. 67, 80 (1976).

The principle is no less true for immigration detention.  In fact, the Supreme Court has endorsed the constitutionality of detaining aliens without bond during the pendency of removal proceedings.  In *Demore v. Kim*, the Supreme Court acknowledged that "the Fifth Amendment entitles aliens to due process of law in deportation proceedings." 538 U.S. 510, 523 (2003) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)).  But it clarified that "detention during deportation proceedings" is nevertheless a "constitutionally valid aspect of the deportation process." *Id.*  Indeed, "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal." *Id.* at 528.  It follows that "the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Id.* at 526.  Against that backdrop, the contention that substantive due process requires a hearing or that detention without a hearing is punitive is untenable.

A procedural due process claim fares no better.  As an "applicant for admission," Martinez Rodriguez has "only those rights regarding admission that Congress has provided by statute." *Thuraissigiam*, 591 U.S. at 140; *see Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("This Court has long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power

to admit or exclude aliens is a sovereign prerogative."). With Section 1225, Congress set the procedural rights afforded to aliens who are present in the United States without admission. "Read most naturally," Section 1225(b)(2)(A) "mandate[s] detention of applicants for admission until certain proceedings have concluded." *Jennings*, 583 U.S. at 297. No part of the statute "says anything whatsoever about bond hearings." *Id.* Accordingly, Martinez Rodriguez is not entitled to a bond hearing as a matter of procedural due process.

        **D.**    **Martinez Rodriguez is not entitled to a bond hearing under the APA.**

        In addition to his earlier APA claim to compel the review of his DACA application, Martinez Rodriguez argues that the respondents' failure to provide him with an individualized custody determination violates the APA. Dkt. No. 1 at 17. He does not elaborate, merely citing the APA in the section heading for his Section 1226 claim. *Id.* at 14.

        Whether he is seeking to set aside *Yajure Hurtado* and the related DHS memorandum as arbitrary and capricious, 5 U.S.C. § 706(2)(A), or whether he is seeking to compel a bond determination, *id.* § 706(1), it is "no matter." *Garibay-Robledo*, 2026 WL 81679, at *10. That is because Martinez Rodriguez asks the Court to "order [his] immediate release" or else "an individualized determination with reasoned findings" as to his eligibility for bond. Dkt. No. 1 at 15. Section 704 of the APA states, in no uncertain terms, that "[a]gency action made reviewable by statute and final agency action *for which there is no other adequate remedy in a court* are subject to judicial review." 5 U.S.C. § 704 (emphasis added). Because Martinez Rodriguez requests habeas relief as the remedy for his APA claim, he unwittingly admits that there is, in fact, an adequate remedy outside of the APA. Moreover, the Supreme Court recently held that "where an alien detainee's claims 'necessarily imply the

– 17 –

invalidity of their confinement' these claims must be brought in habeas." *P.B. v. Bergami*, No. 3:25-CV-2978, 2025 WL 3632752, at *9 (N.D. Tex. Dec. 13, 2025) (O'Connor, C.J.) (quoting *J.G.G.*, 604 U.S. at 672); *cf. Heck v. Humphrey*, 512 U.S. 477, 487 (1994) (same, in Section 1983 context). The APA thus does not provide for judicial review of his claim.

### 4.    Conclusion

In short, Martinez Rodriguez cannot use the APA or the writ of mandamus to force an immigration judge to consider his pending, but un-grantable, DACA application. Neither is Martinez Rodriguez entitled to a bond hearing. As an "applicant for admission," he is properly detained without bond under Section 1225(b)(2)(A). Nothing about the INA, the Due Process Clause, or the APA requires a contrary conclusion.

This expedited petition, in effect, asks the Court to micromanage the presiding IJ and to compel the IJ to hurry up and wait for the *Texas* litigation to conclude. The Court declines to aid Martinez Rodriguez in his collateral attack on the immigration process. Thus, the petition for a writ of habeas corpus (Dkt. No. 1) is denied. Accordingly, his habeas claim for relief against transfer during the pendency of proceedings (Dkt. No. 1 at 14–15) and his pending TRO motion (Dkt. No. 3) are denied as moot.

The Clerk of Court is directed to serve this Order electronically on the United States Attorney's Office for the Northern District of Texas pursuant to the current Service of Process Agreement for federal habeas petitions under 28 U.S.C. § 2241.

So ordered on February 3, 2026.

_____
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE